UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDAL DIVISION

| | |
|---|---|
| IN RE: | BK CASE NO.23-19645-PDR |
| Robert Gregg Dillion | CHAPTER 13 |
| Debtor. | |

**EMERGENCY**
**MOTION FOR PROSPECTIVE RELIEF FROM AUTOMATIC STAY**
**UNDER SECTION 362(d)(4), COMFORT MOTION FOR RELIEF FROM AUTOMATIC**
**STAY FOR A 5 YEAR PERIOD AND MOTION TO RETAIN JURISDICTION**

> **EMERGENCY HEARING REQUESTED:**
>
> Creditor's Motion for Summary Judgment is scheduled in State Court on December 14, 2023 and is at risk of being cancelled over this bankruptcy filing.

COMES NOW **Barclays Mortgage Trust 2021-NPL1, Mortgage-Backed Securities, Series 2021-NPL1, by U.S. Bank National Association, as Indenture Trustee** ("**Creditor**") by and through its undersigned attorney and files this Motion for Prospective Relief From the Automatic Stay for a period of five (5) years under § 362(d)(4), this Comfort Motion for Relief from Automatic Stay and Motion to Retain Jurisdiction:

**FACTUAL BACKGROUND**

1.    Debtor is a relentless bankruptcy filer who filed **four (4)** bankruptcy filings in the Southern District since 2021.  All were dismissed after calculated delay by Debtor to halt Creditor from proceeding with its foreclosure action.

## Factual Background

1.      Creditor has a security interest in property located at 2736 NW 108th Terrace, Sunrise, Florida 33322 (the "**Property**") more particularly described as:

> Lot 2 in Block 6 of GLENBROOK, according to the Plat thereof, as recorded in Plat Book 104, Page 7, of the Public Records of Broward County, Florida.

2.      Creditor's security interest is established as it is the holder of the note and mortgage by virtue of an Assignment of Mortgage.  The loan documents are attached hereto as Exhibit "A".

3.      The Property is declared Debtor's place of residence in his Chapter 7 Petition and which was previously declared Debtor's homestead property in Schedule C of his prior bankruptcy cases.

## THE FORECLOSURE

4.      On May 8, 2019, Creditor's predecessor in interest Bank of America, N.A hereinafter referred to interchangeably with ("**Creditor**") filed its foreclosure complaint in Broward County, Florida under CACE 19010096 (the "**Foreclosure Action**").

5.      The original foreclosure trial was set for On March 10, 2021, only to be cancelled due to Debtor's bankruptcy filing identified below as Bankruptcy 1.

6.      On November 2, 2023, Creditor filed its Motion for Summary Judgment in the Foreclosure Action.

7.      Creditor's Motion for Summary Judgment in the Foreclosure Action is scheduled for December 14, 2023.

8.      On November 22, 2023, Debtor filed his Suggestion of Bankruptcy again seeking to delay forward movement of the Foreclosure Action and attempting to cancel Creditor's Motion for Summary Judgment.

4836-5593-0815, v. 1

**T**HE REVOLVING HABERDASHERY VISITS OF **B**ANKRUPTCY **F**ILINGS

BANKRUPTCY 1:

9.    On February 5, 2021, Debtor filed his first Chapter 13 Voluntary Petition [Doc. 1] under Case Number 21-bk-11138-PDR ("**Bankruptcy 1**").

10.    On February 23, 2021, Debtor filed the Ex Parte Verified Motion for Referral to Mortgage Modification Mediation with Creditor's predecessor in interest [Doc. 25].

11.    On April 15, 2021, Creditor's Proof of Claim [Claim 8-1] (the "**POC**") was filed setting forth a secured claim of $103,853.06 and arrange of $69,455.88.

12.    On April 26, 2021, the Order Granting Verified Motion for Referral to Mortgage Modification ("**MMM Order**") was entered [Doc. 27].

13.    On May 3, 2021, Creditor's predecessor in interest filed its Motion for Reconsideration of the MMM Order [Doc. 30] based on Debtor's inadequate proposed mortgage modification payment.  This Motion was denied.

14.    On July 15, 2021, an Order Confirming Debtor's 2nd Amended Chapter 13 Plan was entered (the "**Confirmation Order**").  The Confirmation Order provided that "[i]f the lender and the debtor fail to reach a settlement, then no later than 14 calendar days after the mediator's Final Report is filed, the debtor will amend or modify the plan to (a) conform to the lender's Proof of Claim (if the lender has filed a Proof of Claim), without limiting the Debtor's right to object to the claim or proceed with a motion to value; or (b) provide that the real property will be "treated outside the plan." If the property is "treated outside the plan," the lender will be entitled to in rem stay relief to pursue available state court remedies against the property.

15.  On September 28, 2021, the Final Report of Mortgage Modification [Doc. 49] was filed following mediation which resulted with an impasse.

16.  Debtor failed to timely file a Modified Chapter 13 Plan acknowledging the Final Report of Mortgage Modification and the impasse regarding mortgage modification and ignored this Court's Order as well as the Administrative Order set forth by Southern District of Florida Bankruptcy Court.

17.  Ultimately, on August 31, 2022, an Order Dismissing Case Pursuant to Trustee's Report of Non-Compliance with Post Confirmation Plan was entered.

**Bankruptcy 2: [Dismissed 16-days]**

18.  On January 4, 2023, Debtor filed his second Chapter 13 Voluntary Petition [Doc. 1] under Case Number Case Number 23-10051-PDR five (5) months after Bankruptcy 1 dismissed. This was a skeletal filing.

19.  On January 20, 2023, an Order Dismissing Case for Failure to File Creditor Matrix was entered with the following additional requirements remaining outstanding: Summary of Schedules, Schedules A-J, Unsworn Declaration, Statement of Financial Affairs, Chapter 13 Plan, Chapter 13 Statement of Current Monthly Income, Debtor's Certificate of Credit Counseling, and Debtor's Payment Advices- essentially failure to follow any of this Court's requirements.

**Bankruptcy 3: [Dismissed 14-days]**

20.  On August 8, 2023, Debtor filed his third Chapter 13 Voluntary Petition [Doc. 1] under Case Number Case Number 23-16261-SMG six (6) months after Bankruptcy 2 dismissed.  This was also a skeletal filing.

21.  On August 22, 2023, an Order Dismissing Case for Failure to File Creditor Matrix was entered with the following additional requirements remaining: Summary of Schedules,

4

Schedules A-J, Unsworn Declaration, Statement of Financial Affairs, Chapter 13 Plan, Chapter 13 Statement of Your Current Monthly Income, Debtor's Certificate of Credit Counseling, and Debtor's Payment Advices- essentially failure to follow any of this Court's requirements.

**Bankruptcy 4: [The Same False Start]**

22.   On <u>November 22, 2023</u>, Debtor filed his skeletal Chapter 7 Voluntary Petition [Doc. 1] under Case Number Case Number 23-19645-PDR only three (3) months after Bankruptcy 3 dismissed.

23.   On <u>November 22, 2023</u>, the Clerk issued its Notice of Incomplete Filings [Doc, 7] including Debtor's failure to file: (1) the Creditor Matrix, (2) Summary of Assets and Liabilities and Statistical Information, (3) Schedules A-J, Statement of Financial Affairs, (4) Declaration Concerning Debtor's Schedules, (5) Chapter 7 Statement of Current Monthly Income, (6) a Certificate of Budget and Budget Counseling, and (7) Payment Advises.

24.   Despite Debtor's failure to provide these documents the Chapter 7 Trustee issued a Motion to Decline Dismissal of Case [Doc. 9] in hopes of liquidating assets for the benefit of the unsecured creditors.

25.   Creditor has not yet filed its Proof of Claim, but will prior to the bar date.   The anticipated Proof of Claim will evidence the secured amount of $105,036.71.   Whild Debtor continues to accumulate bankruptcy filings, he also continues to accumulate arrearage.

    **a.**   Bankruptcy 1 arrearage totaled $69,455.88;

    **b.**   Bankruptcy 2 arrearage approximately totaled $84,384.86;

    **c.**   Bankruptcy 3 arrearage totaled $97,350.34;

4836-5593-0815, v. 1

    **d.**  Bankruptcy 4 arrearage continues to accrue[1];

26.  Just like the three (3) prior **FAILED** bankruptcy cases, **this case is another false start**. Debtor continues his pattern of filing skeletal petitions and abandoning the case. Filing a bankruptcy case is not supposed to be a revolving door at a fashion haberdashery, where the debtor tries on the sweater, benefits from the stay, then casually removes it, drops it on the floor of the changing room, leaves the store and then returns with a rinse and repeat.

**SUBSTANTIVE LAW**

**COMFORT MOTION FOR RELIEF**

27.  As this is Debtor's third bankruptcy case within the year, no automatic stay goes into effect in this case.  *See* 11 U.S.C. 362(c)[2].

**MOTION FOR PROSPECTIVE RELIEF FROM THE AUTOMATIC STAY**

28.  Debtor's 4th bankruptcy cases including is the paradigm of bankruptcy abuse.

29.  Prospective relief for a period of five (5) years should be granted based on the Debtor's history or totality of the circumstances which include by Debtor's four (4) cases overall demonstrating Debtor's scheme to delay, hinder and defraud Creditor pursuant to § 362(d)(4).  Cf. *In re Wilke*, 429 B.R. 916, 923 (Bankr. N.D. Ill. 2010) (ordering relief under § 362(d)(4) where debtor and a non-debtor engaged in a scheme involving multiple bankruptcy filings, fraudulent transfers of the real property including a transfer on the eve of the filing, and fraudulent procurement of mortgages); s*ee generally First Yorkshire Holdings, Inc. v. Pacifica L 22, LLC (In*

---

[1] Creditor acknowledges that this is a Chapter 7 bankruptcy and not subject to a Chapter 13 Plan, however the compounding interest illustrates Debtor's intent to delay and hinder Creditor's movement in its Foreclosure Action to Creditor's detriment.

[2] Creditor files this Comfort Motion for Relief, even though it has relief from stay as this is Debtor's third pending case within the year to preserve its hearing on the Moton for Summary Judgment which is at risk of being cancelled by an uninformed clerk who does not understand bankruptcy stay issues.

4836-5593-0815, v. 1

*re First Yorkshire Holdings, Inc.*), 470 B.R. 864, 870–71 (B.A.P. 9th Cir. 2012) (discussing the requirements of § 362(d)(4) relief).

30.   A court may infer existence of a scheme to delay, hinder, or defraud creditors solely from the fact of serial filings, and may along consider other factors in determining whether relief under § 362(d)(4) is warranted including the timing and sequence of the filings, the feasibility of any plan proposed by the debtor in the case, and the debtor's use of the cases to collaterally attack the foreclosure judgment related to the property.  *In re Richmond*, 516 B.R. 229, 235 (Bankr. E.D. N.Y. 2014).

31.   The timing of the four cases close in time, their short shelf-life, and the Debtor's conduct during those cases, close in time to foreclosure events demonstrate Debtor's intent to scheme to delay, hinder or defraud Creditor and other creditors.

32.   Most telling with the timing and sequence of the bankruptcy cases, is the Debtor's inability or unwillingness to pay Creditor through a confirmable Chapter Plan resulting in an increase of arrearage from Bankruptcy 1 to Bankruptcy 4.  This increase in arrearage solidifies that the filings were Debtor's scheme to delay, hinder, and ultimately defraud Creditor because the cases went nowhere and were a mechanism to delay and increase the debt rather than reorganize in the prior cases.  Now, Debtor's Chapter 7 filing is a ploy to stop Creditor's scheduled Motion for Summary Judgment hearing.

33.   Debtor's particular activity in Bankruptcy 1 where he abandoned the case after the mediation impasse shows that Debtor's bankruptcy success is unobtainable if it was he would have timely filed an Amended Plan to treat the pre petition arrears and not fold up the tent when loss mitigation did produce a desired outcome.  A Chapter 13 Bankruptcy case at is core is supposed to be a plan of reorganization, not a hurried shopping visit hitched to a loss mitigation cart.  As the

7

Supreme Court of the United States held, a bankruptcy court "is not bound to clog its docket with visionary or impracticable schemes for resuscitation" *Tenn. Pub. Co. v. Am. Nat. Bank*, 299 U.S. 18, 22 (1936).

34. Debtor's four case history shows his intent to delay, hinder and defraud Creditor.

35. A creditor is entitled to relief from stay under §362(d)(1) for "cause". Whether cause exists to lift the stay must be determined on a case-by-case basis based on the totality of the circumstances in each particular case." *In re Mack*, 347 B.R. 911, 915 (Bankr.M.D.Fla 2006). The totality of the circumstances includes how the parties have conducted themselves, the debtor's motives and whether the debtor has acted in good faith. *Id*. (citing *In re Little Creek Dev. Co*., 779 F.2d 1068, 1071 (5th Cir. 1986)).

36. Cause also exists under §362(d)(1) as a result of the Debtor's continued use of the Property without adequate protection. *In re McGaughey*, 24 F.3d 904, 906 (7th Cir. 1994) (noting that lack of adequate protection is a typical basis for granting relief from stay for cause).

37. The purpose of this statutory provision of prospective relief is to prevent abuse by bad faith filers. *See In re Henderson*, 395 B.R. 893, 901-02 (Bankr. D.S.C. 2008). Courts consider the non-exclusive list of factors when determining whether prospective relief is appropriate: 1) strategic filing of bankruptcy petitions to prevent collection; 2) multiple bankruptcy petitions by multiple parties to protect common property; 3) lack of evidence of changed circumstances between filings; and 4) inability to fund a plan. *Id*. All of these factors exist in the present case!

38. Debtor's four (4) bankruptcies to prevent foreclosure events, and multiple filings without demonstrating a real change in circumstances necessitate this Court providing prospective relief from the automatic stay to Creditor in any future filing affecting the Property.

### *Cause*

39.  Prospective relief for a period of five (5) years should be granted pursuant to §362(d)(4) because Debtor deliberately filed at all four (4) bankruptcies to delay, hinder and defraud Creditor.  Three of the four cases were skeletal petitions that each died rapidly.

40.  The purpose of this statutory provision of prospective relief is to prevent abuse by bad faith filers.  *See In re Henderson*, 395 B.R. 893, 901-02 (Bankr. D.S.C. 2008).

41.  Debtor's intent in the Fourth Bankruptcy is transparent- Debtor filed this case to stop Creditor's Motion for Summary Judgment in the Foreclosure Action.  Bankruptcy is not intended to be a bus stop for Debtors hoping to evade foreclosure or shelter from the storm by filing these "revolving door at the haberdashery" type cases reeking with bad faith.

### *Bad Faith*

42.  Debtor's Fourth Bankruptcy, is filed in bad faith.  Section 362(c)(3)(C) identifies several types of conduct that will trigger the automatic presumption that the case was filed not in good faith.  If one or more of those specific acts are present, the movant must rebut the presumption with clear and convincing evidence. In re McKinnon, 378 B.R. 405, 410 (Bankr. S.D. Ga. 2007).

43.  Sections 362(c)(3)(I) and 362(c)(3)(II) (aa)-(cc) list acts or omissions that will trigger the presumption of bad faith as to all creditors: 1) a previous case under Chapter 7, 11 or 13 pending during the preceding year; and 2) the previous case was dismissed within such 1-year period after the debtor failed to file documents required by this title or the court without substantial excuse.

44.  Under 11 U.S.C. § 362(c)(i)(III), a case is presumptively not filed in good faith if Debtor fails to show any change in the financial or personal affairs of Debtor since the dismissal

4836-5593-0815, v. 1

of his prior bankruptcy.  Here, we see a pattern of increasing arrearage from Debtor's Bankruptcy 1 to Bankruptcy 4 supporting a continued deterioration of financial affairs and capabilities.

45.   When the presumption of bad faith arises as it does here, the Debtor must rebut that presumption with clear and convincing evidence- which Debtor still cannot and is unlikely to do as Debtor consistent with his prior filings fails to file any schedules proving a change in circumstance.

## Argument

46.   11 U.S.C. 362(c)(4) provides that if a single or joint case is filed by or against a debtor who is an individual under this title, and if two or more single or joint cases of the debtor were pending within the previous year but were dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b), the stay under subsection (a) shall not go into effect upon the filing of the later case.

47.   Creditor is entitled to prospective relief because Debtor set out on a premeditated and strategic path to scheme, delay, hinder and defraud Creditor based on the fourth bankruptcy filing, and because he approaches them as a casual shopping excursion.  Nothing about the duties of a Debtor is taken seriously, and Court Orders are ignored here. This Debtor will not stop filing pointless bankruptcy cases, without an explicit order that provides Creditor relief to pursue its state court remedies as to the property, despite Debtor's serial bankruptcy filings.

48.   The FOUR bankruptcy cases are all bad faith filings to clog the bankruptcy system with Debtor's visionary and impracticable scheme for resuscitation or worse- abuse while bankruptcy intended for true hardship.

49.   The Eleventh Circuit states, "[a] comprehensive definition of good faith is not practicable.  Broadly speaking, the basis inquiry should be whether or not under the circumstances

4836-5593-0815, v. 1

of the case there has been an abuse of the provisions, purpose or spirit of [the chapter] in the proposal. *Kitchens v. Ga. R.R. Bank and Trust Co. (In re Kitchens)*, 702 F.2d 885, 888 (11th Cir.1983).

50.   Debtor's continuous bankruptcy filings, cancelling hearings that would bring the Foreclosure Action to a close, mounting arrearage, and an inability to fund a plan show time [Bankruptcy 1]; after time [Bankruptcy 2]; after time [Bankruptcy 3]; after time  [Bankruptcy 4] Debtor's egregious pattern of conduct is malfeasance and systemic abuse of the bankruptcy system.

WHEREFORE, Creditor requests that the Court:

(a)  Grant Relief from the Automatic Stay under  § 362(d)(4) as it pertains to this Property with a prospective period of five (5) years as to any filer and with a waiver of the 14-day automatic stay;

(b)  Grant Comfort Relief from Stay;

(c)  Allow for immediate recordation of the Order Granting Relief despite any other bankruptcy filings;

(d)  Award fees and costs for the filing of this Motion in the amount of $1,238.00;

(e)  Retain Jurisdiction to Enter this Order and

4836-5593-0815, v. 1

(f)  Grant such other relief as this Court deems just and proper.

November 29, 2023

/s/ Allison D. Thompson
Allison D. Thompson, Esquire
Florida Bar No. 0036981
MECHANIK NUCCIO HEARNE
& WESTER, P.A.
305 S. Boulevard
Tampa, FL 33606
adt@mechaniknuccio.com
(813) 276-1920 - telephone
(813) 276-1560 – facsimile
Attorneys for Creditor

## CERTIFICATE OF SERVICE

I hereby certify that I am admitted to the bar of this Court.  I further certify that the foregoing document was served either by CM/ECF transmission or standard first class mail this 29th day of November 2023, to the following:

Robert Gregg Dillon
2763 NW 108 Terrace
Sunrise, FL 33322
**Pro Se Debtor**

**Kenneth A Welt**
4581 Weston Road Suite 355
Weston, FL 33331
**Chapter Trustee**

United States Trustee
51 S.W. 1st Ave., Ste. 1204
Miami, Florida 33130
**U.S. Trustee**

/s/ Allison D. Thompson
Allison D. Thompson
Florida Bar No. 36981
adt@mechaniknuccio.com
**MECHANIK NUCCIO HEARNE & WESTER, P.A.**
305 South Boulevard
Tampa, Florida 33606-2150
(813) 276-1920 (Tel)
(813) 276-1560 (Fax)
Attorneys for Creditor

12

# NOTE

Loan No.: ████195

September 25, 1997                FORT LAUDERDALE    ,        Florida
[Date]                                  [City]                      [State]

2763 NORTHWEST 108TH TERRACE, SUNRISE, FL 33322
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 84,408.00      (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is NationsBanc Mortgage Corporation

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 7.750   %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A)  Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the 1st  day of each month beginning on November  1, 1997  . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on  October  1, 2027  , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at NationsBanc Mortgage Corporation, P.O. Box 85065, Louisville, KY 40285-5065
                                                                                 or at a different place if required by the Note Holder.

(B)  Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 604.71   .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A)  Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  15  calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000  % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

(D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

EXHIBIT "A"

INITIALS____  INITIALS____  INITIALS____  INITIALS____

FIXED RATE NOTE - Single Family - FNMA/FHLMC Uniform Instrument
Florida - Form 3200   12/83                Page 1 of 2                        N32MU1  05/96

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11.** The state documentary tax due on this Note has been paid and the proper stamps have been affixed to the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Robert Gregg Dillon_ (Seal)
ROBERT GREGG DILLON -Borrower

SSN:

_Risa A Gross-Dillon_ (Seal)
RISA A. GROSS-DILLON -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

SSN:                          SSN:

*[Sign Original Only]*

PAY TO THE ORDER OF
_____

WITHOUT RECOURSE _____
NationsBanc Mortgage Corporation

By _David F Hellams_
DANIEL F. HELLAMS
SR. VICE PRESIDENT

001  002

Please Record & Return To:
CONSOLIDATED TITLE CO.
55 Weston Road, Suite 405
Ft. Lauderdale FL 33326

Please Return To:
NationsBanc Mortgage Corporation

2059 Northlake Parkway
Tucker, GA 30084
Attn: Nancy Korcsi/Loan Review

97-522203  T#202
10-03-97  09:43AM

$  295.75
DOCU. STAMPS-MTGE

$  168.82
INTANGIBLE TAX

RECVD.BROWARD CNTY

COUNTY ADMIN.

Prepared by or under the supervision of
William H. Peirson, 4400 Alpha Road, Dallas,
TX  75244.

——————[Space Above This Line For Recording Data]——————

## MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on  September 25, 1997
The mortgagor is ROBERT GREGG DILLON and RISA A. GROSS-DILLON, HUSBAND AND WIFE

, whose address is

2763 NORTHWEST 108TH TERRACE, SUNRISE, FL 33322
("Borrower"). This Security Instrument is given to
NationsBanc Mortgage Corporation

which is organized and existing under the laws of The State of Texas                  , and whose
address is  P.O. Box 35140, Louisville, KY 40212

("Lender"). Borrower owes Lender the principal sum of
eighty four thousand four hundred eight and N0/1000ths
Dollars (U.S. $  84,408.00  ). This debt is evidenced by Borrower's note dated the same date as this Security
Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
October  1, 2027                . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the
Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest,
advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants
and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and
convey to Lender the following described property located in                  Broward         County, Florida:

Lot 2 in Block 6 of GLENBROOK, according to the Plat thereof,
as recorded in Plat Book 104, Page 7, of the Public Records of
Broward County, Florida.

which has the address of              2763 NORTHWEST 108TH TERRACE, SUNRISE                 [Street, City],
Florida         33322         ("Property Address");
              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances,
and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security
Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to
mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower
warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of
record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with
limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the
principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.
2. Funds for Taxes and Insurance. Subject to applicable law or to a written waiver by Lender, Borrower shall pay
to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly
taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold
payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance
premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in
accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called
"Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender
for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement
Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that
applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed
the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of
expenditures of future Escrow Items or otherwise in accordance with applicable law.

Initials  RGD  RAG

FLORIDA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 1 of 5

Form 3010 9/90
Amended 1/95
WFLC1  06/97

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Initials: _RBD_ _BKD_

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

Initials _RPh_ _S&D_

FLORIDA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 3 of 5

Form 3010 9/90
Amended 5/93
SiFLC3 05/98

BK 27082 PG 0630

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS.  Borrower and Lender further covenant and agree as follows:

21. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

22. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

23. **Attorneys' Fees.** As used in this Security Instrument and the Note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court.

24. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ Other(s) [specify] | | |

Initials _PHK_ _LXD_

FLORIDA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 5 of 5

Form 3010 9/90
Amended 5/90
S3FLC4 05/98

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Signed, sealed and delivered in the presence of:

_Paula Walters Moye_
PAULA WALTERS MOYE

_Robert Gregg Dillon_ _____ (Seal)
ROBERT GREGG DILLON                    -Borrower
2763 N.W. 108 Terrace, Sunrise, FL 33322

_Dawn Page_
Dawn Page

_Risa A. Gross Dillon_ _____ (Seal)
RISA A. GROSS-DILLON                    -Borrower
2763 N.W. 108 Terrace, Sunrise, FL 33322

_____ (Seal)
                                       -Borrower

_____ (Seal)
                                       -Borrower

STATE OF FLORIDA,    Broward    County ss:

The foregoing instrument was acknowledged before me this _September 21, 1997_
by ROBERT GREGG DILLON and RISA A. GROSS-DILLON , husband and wife

who is personally known to me or who has produced _their drivers license_    as identification.

_Paula Walters Moye_
Notary Public    PAULA WALTERS MOYE

PAULA WALTERS MOYE
COMMISSION # CC 587454
EXPIRES DEC 2, 1998
BONDED THRU
ATLANTIC BONDING CO., INC.

BK 27082 PG 00632

RECORDED IN THE OFFICIAL RECORDS BOOK
OF BROWARD COUNTY, FLORIDA
COUNTY ADMINISTRATOR

FLORIDA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 6 of 6

Form 3010 9/90
Amended 5/92
SMFL08 04/92

Instr# 115792527 , Page 1 of 1, Recorded 05/09/2019 at 10:33 AM
Broward County Commission

Prepared by: MARINOSCI LAW GROUP, P. C
Record & Return to
Marinosci Law Group, P.A.
100 West Cypress Creek, Ste.1045
Fort Lauderdale, FL 33309 Telephone:
(954) 644-4704
Facsimile. (954) 772-9601

Assignment of Mortgage

Loan Number# _____5778

*KNOW ALL MEN BY THESE PRESENTS:*

*THAT BANK OF AMERICA, NA S/B/M TO NATIONSBANC MORTGAGE CORPORATION* residing or located: P.O. BOX 35140, LOUISVILLE, KY 40232, herein designated as the assignor, for and in consideration of the sum of $1.00 Dollar and other good and valuable consideration, the receipt of which is hereby acknowledged, does hereby grant, bargain, assign, transfer and set over unto BANK OF AMERICA, N.A. residing or located at: 101 N. TRYON ST., CHARLOTTE, NC 28255 herein designated as the assignee, the mortgage dated September 25, 1997, executed by ROBERT GREGG DILLON AND RISA A. GROSS-DILLON, husband and wife recorded October 3, 1997, in BROWARD County, Florida in Official Records Book 27082 at Page 6628, encumbering the property more particularly described as follows:

LOT 2, IN BLOCK 6 OF GLENBROOK, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 104, PAGE 7, OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA.

PROPERTY ADDRESS: 2763 NW 103TH TERRACE. SUNRISE, FL 33322

*In Witness Whereof,* the said Assignor has hereunto set his hand and seal or caused these presents to be signed by its proper corporate officers and its corporate seal to be hereto affixed this _____2ND_____ day of ___MAY___ , 2019.

Signed in the presence of:

                                                    BANK OF AMERICA, NA S/B/M TO NATIONSBANC
                                                    MORTGAGE CORPORATION

                                                    PRINTNAME: LOURDES RODRIGUEZ

                                                    TITLE: ASSISTANT VICE PRESIDENT

WITNESS:

PrintName:
                Yeeka Merida

WITNESS.

PrintName: Debora Patricia Marrero

STATE OF  FLORIDA

COUNTY OF  HILLSBOROUGH

PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for the aforesaid county and state, on this the___ 2ND _____ day of ___MAY___ 2019, within my jurisdiction, the within named LOURDES RODRIGUEZ  who acknowledged to me that (s)he is  ASSISTANT VICE PRESIDENT  , and that for and on behalf of BANK OF AMERICA, NA S/B/M TO NATIONSBANC MORTGAGE CORPORATION and as its act and deed (s)he executed the above and foregoing instrument, after first having been duly authorized BANK OF AMERICA, NA S/B/M TO NATIONSBANC MORTGAGE CORPORATION to do so.

WITNESS my hand and official seal in the County and State last aforesaid this___ 2ND ___ day of ___MAY___ 2019.

ALEXANDRA MONEGRO
Notary Public, State of Florida
Commissioned FF 994941
My comm. expires May 22, 2020

Alexandra Monegro  NOTARY PUBLIC

16-16489

Instr# 117889643 , Page 1 of 2, Recorded 01/25/2022 at 12:55 PM
Broward County Commission

When Recorded Return To:
Fannie Mae
C/O Nationwide Title Clearing, LLC
2100 Alt. 19 North
Palm Harbor, FL 34683

**Loan Number** ▬▬▬▬▬
**Investor Loan Number** ▬▬▬▬▬

## ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION**, the sufficiency of which is hereby acknowledged, the undersigned, **BANK OF AMERICA, N.A., WHOSE ADDRESS IS 4909 SAVARESE CIRCLE, TAMPA, FL 33634, (ASSIGNOR)**, by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to **BARCLAYS MORTGAGE TRUST 2021-NPL1, MORTGAGE-BACKED SECURITIES, SERIES 2021-NPL1, BY U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE , WHOSE ADDRESS IS C/O GREGORY FUNDING LLC, 13190 SW 68TH PARKWAY, SUITE 200, TIGARD, OR 97223, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage was made by **ROBERT GREGG DILLON AND RISA A. GROSS-DILLON, HUSBAND AND WIFE to NATIONSBANC MORTGAGE CORPORATION** and recorded in Official Records of the Clerk of the Circuit Court of **BROWARD** County, **Florida**, in **Book 27082, Page 0628 and Instrument # 97-522203**, upon the property situated in said State and County as more fully described in said Mortgage.

**Dated this 25th day of January in the year 2022**
**BANK OF AMERICA, N.A., by NATIONWIDE TITLE CLEARING, LLC, its Attorney-In-Fact**

_Jenna Martine_
JENNA MARTINE
VICE PRESIDENT

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

_Al Baker_
**ALAN BAKER**
WITNESS

_Ke Vought_
**KIMBERLY VOUGHT**
WITNESS

Document Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
FNMA1 425749945 2021-NPL2-SF1-SALE    DOCR T252201-12:18:51 [C-2] EFRMFL1

*D0090034315*

Instr# 117889643 , Page 2 of 2, End of Document

**Loan Number** ▮▮▮▮▮▮▮▮▮
**Investor Loan Number** ▮▮▮▮▮▮▮▮▮

STATE OF FLORIDA
COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online
notarization on this 25th day of January in the year 2022, by Jenna Martine as VICE PRESIDENT
of NATIONWIDE TITLE CLEARING, LLC as Attorney-in-Fact for BANK OF AMERICA, N.A., who, as
such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein
contained. He/she/they is (are) personally known to me.


**VALERA KRISTOF**
**COMM EXPIRES: 09/19/23**


VALERA KRISTOF
NOTARY PUBLIC
STATE OF FLORIDA
COMM# GG 914976
EXPIRES: 09/19/2023

**Document Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**
FNMA1 425749945 2021-NPL2-SF1-SALE    DOCR T252201-12:18:51 [C-2] EFRMFL1

*D0090034315*